Argued 12 April; decided 29 May; rehearing denied 7 August, 1899.

**BEALE *v.* HITE.**

[57 Pac. 322, 58 Pac. 102.]

ADVERSE POSSESSION OF PUBLIC LANDS—GOVERNMENT TITLE.—An entry on and continued possession of land that had been selected and claimed by the state under a congressional grant claiming that it was vacant public land of the United States, without assertion of title, but with the expectation of obtaining title from the government, is not adverse within the meaning of the statute of limitations.

CLAIM OF TITLE NECESSARY TO ADVERSE POSSESSION.—Where an adverse possession of real property for the statutory period vests in the possessor a complete title against the world, with the rights and remedies incident to a written title, such possession must be under a claim of title: *Springer* v. *Young*, 14 Or. 280; *Hicklin* v. *McClear*, 18 Or. 126, approved.

From Coos : GEO. H. BURNETT, Judge.

Action of ejectment by D. Grant Beale, Kate Labrie, and Jennie Maclay against William and Emma J. Hite. There was a judgment for plaintiffs, from which this appeal is taken.                           AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. Joseph W. Bennett* and *Edward B. Watson.*

For respondents there was a brief and an oral argument by *Mr. S. H. Hazard.*

MR. JUSTICE BEAN delivered the opinion of the court.

This is an action to recover one hundred and sixty acres of land in Coos County, commenced in September, 1895. The defendants claim title by adverse possession.  Upon the trial, and after the evidence was all in, by direction of the court the jury returned a verdict in favor of plaintiffs, on the ground that the defendants had not proved a defense sufficient to be submitted to them ; and from the judgment entered thereon the defendants appeal.

The land in controversy was granted to the State of Oregon by act of congress, March 12, 1860, as swamp and overflowed land, and conveyed by the state to the plaintiffs' ancestor on November 9, 1886, although not patented to it by the general government until March 3, 1891.  In March or April, 1884, but after the land had been selected and claimed by the state as swamp land, the defendant settled upon it with the purpose of acquiring title under the laws of the United States, claiming that it was not in fact swamp land, but vacant public land, subject to entry under the pre-emption and homestead laws.  He thereafter attempted to make a pre-emption filing thereon, but was unable to do so because it had been claimed by the state as swamp land, and withdrawn from settlement on that account ; and a sub-

35 OR.—12.

sequent offer and attempt to enter the same as a homestead proved unavailing for the same reason. At the time of his settlement, a contest was pending in the land department of the United States, involving the character of the land, which was subsequently determined in favor of the state, and a patent thereafter issued in conformity thereto.

The contention for the plaintiffs is that, under these circumstances the defendant's entry and possession of the land was not adverse, within the meaning of the statute of limitations, and in this position we concur. The evidence shows that he entered upon the land under the mistaken claim that it was vacant public land of the United States, with the expectation of obtaining title from the government, and that he did not enter or hold possession under any claim of title in himself. It is true he testifies that he claimed the land as his own, but on cross-examination states—what is borne out by his entire course of conduct—that such claim was based on the theory that the land belonged to the government of the United States, and that by reason of his settlement and cultivation he was entitled to acquire the title. His contention was simply that the land was open to settlement, and he had the right to acquire it under the laws governing its disposition. To that end he attempted to file a pre-emption claim, and afterwards to make a homestead entry, but was unable to make either. He was, in short, nothing more than a mere squatter occupying land which he believed to be a part of the public domain, with the purpose of acquiring title from the government, if it should be determined in the then pending contest not to be swamp land, and this does not amount to an adverse holding: *Schleicher* v. *Gatlin,* 85 Tex. 270 (20 S. W. 120).

It is an indispensable requisite to an adverse possession

under our statute (Hill's Ann. Laws, § 4), that it be accompanied with a claim of title or ownership in the occupant.   Mr. Buswell says :   ''It is the occupation with an intent to claim against the true owner which renders the entry and possession adverse.   'It is not possession alone, but that it is accompanied with the claim of the fee, which, by construction of law, is deemed *prima facie* evidence of such an estate :' ''     Buswell, Lim. p. 328. And Mr. Justice FIELD says :   ''To render a possession adverse, it must be hostile in its origin, and hostile in its continuance.   The entry upon the premises must be made, and the possession must be accompanied, with a claim of title against the whole world.   In other words, the occupant must assert ownership in himself.   An entry by permission of another, or, with an admission of another's title, will not set the statute running :''   *Adams* v. *Burke*, 3 Sawy. 420 (Fed. Cas. No. 49).   And Mr. Wood says that while, strictly speaking, it may not be necessary, as held by some courts, that the entry or possession should in all cases be under a pretense or claim of title by the occupant himself, yet, ''practically in all of the states there must be an entry or possession under a claim of title, or such a user of the premises as raises a presumption of such a claim, and in many of the states a claim of title, as well as exclusive and continuous occupancy, is held to be indispensable ;   and generally it may be said that the intention of the occupant is a material element in determining whether or not the possession is adverse in such a sense as to operate as an actual ouster of the true owner, and defeat his right of entry.   It is so well settled as to be regarded as a rule that, where there is no claim of title in the occupant, his possession cannot be adverse to the true title, upon the principle that, where a person is in possession, making no claim whatever to the premises, his title, in presumption of law, is

in amity with, and subservient to, the true title.   *   *   *
It is the intention to claim title which makes the posses-
sion adverse; but this intention must be evinced and
effectuated by the manner of occupancy; and neither
a mere claim of title without occupancy, nor a mere
occupancy without an intent to claim title, is sufficient :"
2 Wood, Lim. § 256.

From these authorities it is apparent that, to render
a possession of real property adverse so as to vest the
title in the occupant, and bar a recovery by the owner,
it is an essential requisite that such possession be under
a claim of title hostile to the true owner; and this is the
doctrine of the previous decisions of this court, as we
understand them.   In *Swift* v. *Mulkey*, 17 Or. at p. 538
(21 Pac. 872), it is said :   "To be adverse possession, it
must be under a claim of ownership, though it need not
be under color of title.   It is sufficient if the party goes
upon the land, and declares to the world by his acts and
conduct that he is the owner of it, and maintains that
attitude the requisite period."   And again in *Springer*
v. *Young*, 14 Or. at p. 285 (12 Pac. 404), Mr. Justice
Strahan, speaking for the court, says :   "So, also, if at
the time one enters, or afterwards, he does not claim the
title himself, but acknowledges the title of another, his
possession must be taken as an entry or holding in sub-
ordination to the title of the person whose right he ac-
knowledges."   So, also, in *Hicklin* v. *McClear*, 18 Or. at
p. 138 (22 Pac. 1061), it is said :   "In order to establish
that fact [adverse possession] it must appear that the
appellant, and those under whom he claims, were, during
that time, in the visible, notorious, and exclusive posses-
sion, under a claim of ownership.   The possession must
have been of such a character as to afford the respondent
the means of knowing it, and of the claim."

The California authorities (*Hayes* v. *Martin*, 45 Cal.

559 ;   *McManus* v. *O'Sullivan*, 48 Cal. 7 ;   *Francoeur* v.
*Newhouse*, 14 Sawy. 600, 43 Fed. 236), relied on by the de-
fendant seem to hold that it is sufficient to bar a recovery,
under the statutes of that state, if the possession be hos-
tile to the particular claim of the other party in the action
to which it is opposed in proof.   These decisions were
made under a statute defining adverse possession, and,
besides, it would seem that in each of them the defend-
ant's possession was under a recognized claim of title,
and in some, if not all, the statute of limitations was set
up in defense of a subsequently acquired paper title.   The
same is true of *Fellows* v. *Evans*, 33 Or. 30 (53 Pac. 491).

Where the effect of the statute of limitations is not to
transfer the fee to land from the true owner to the oc-
cupier, but only to destroy his remedy for its recovery by
action, there may be some reason for holding that a pos-
session which is adverse as against the plaintiff is suf-
ficient to bar the action ; but where, as in this state, an
adverse possession of real property for the period pre-
scribed by the statute vests a perfect title in the possessor
as against the whole world, and gives him all the reme-
dies incident to the possession and ownership under a
written title (*Parker* v. *Metzger*, 12 Or. 407, 7 Pac. 518),
it seems to us no other reasonable conclusion can be
reached than that such possession must be under a claim
of title in the occupant, and with an intention to hold
it against all the world.   Within this rule the defend-
ant's occupancy was manifestly insufficient.   As already
pointed out, he never at any time claimed title in him-
self, but always admitted the title to be in the United
States, and sought to enter such land under the pre-
emption and homestead laws.   It was for the purpose of
thus acquiring the title that he made his settlement and
retained possession, all the time admitting that the title
was not in him.   It follows from these views that, assum-

ing that the statute of limitations will begin to run in favor of one in possession of swamp land prior to patent from the general government therefor, which seems very doubtful under the recent decisions of the Supreme Court of the United States, holding that the legal title to such land passes only on delivery of the patent (*Michigan Land Co.* v. *Rust*, 168 U. S. 589, 18 Sup. Ct. 208; *Brown* v. *Hitchcock*, 19 Sup. Ct. 485), the judgment of the court below must be affirmed, and it is so ordered.

AFFIRMED.

Decided 7 August, 1899.

ON MOTION FOR REHEARING.

PER CURIAM.   The questions in this case having been thoroughly and exhaustively re-examined in the recent case of *Altschul* v. *O'Neill*, 35 Or. 202 (58 Pac. 95), and the conclusion there reached being in harmony with the opinion heretofore rendered in this case, the petition for rehearing is denied.            REHEARING DENIED.

Decided 12 June, 1899.