## UNITED STATES v. PATE.

### No. 100.

District Court, W. D. Arkansas.
Texarkana Division.

Dec. 2, 1942.

Charles A. Beasley, Jr., Asst. U. S. Atty., of Fort Smith, Ark., for plaintiff.

William H. Arnold, Jr., of Texarkana, Ark., and James S. McConnell, of Nashville, Ark., for defendant.

LEMLEY, District Judge.

This is an action brought by the United States of America against the defendant Oscar J. Pate wherein the Government is attempting to hold said defendant personally liable, under 31 U.S.C.A. § 192, for failure, while administrator of the estate of Lula Meadors, deceased, to prefer and pay in full a debt due the United States. The case was tried to the Court upon oral testimony and an agreed statement of facts.

At the conclusion of the hearing, the Court made the following findings of fact and conclusions of law:

### Findings of Fact.

1. On April 24th, 1936, Lula Meadors executed and delivered to Howard Lumber Company her promissory note in the sum of $2,493.93, payable in fifty-nine consecutive monthly installments of $41.57 each, and one installment of $41.30, the first installment being due May 10th, 1936, said note bearing interest from maturity until paid at the rate of 6% per annum. Said lumber company endorsed said note over to the Industrial Bank and Trust Company, and the latter assigned the same to a Federal Housing Administrator on January 28th, 1937. The said Lula Meadors during her lifetime reduced said indebtedness to $1,580.36, plus interest from January 28th, 1937.

2. Lula Meadors died on January 25th, 1938, a resident and citizen of Howard County, Arkansas. Administration proceedings upon her estate were instituted in the Probate Court of Howard County, Arkansas, presided over by the Honorable A. P. Steel, Chancellor of the Sixth Chancery District of Arkansas. Said Court appointed T. P. Meadors as administrator of said estate. Later, said Meadors died and the Court appointed Mrs. Charles W. Dodson as administratrix thereof.

3. The United States of America, acting by and on authority of the Attorney General of the United States, through Honorable Clinton R. Barry, United States Attorney, by Honorable John E. Harris, Assistant United States Attorney, duly filed a claim in the Probate Court of Howard County, Arkansas, against said estate on said note for the amount of the unpaid balance thereon, to-wit, $1,580.36, plus interest as aforesaid. Said claim was filed in the following manner: Said Clinton R. Barry, United States Attorney, by John E. Harris, Assistant United States Attorney, mailed said claim to the Probate Clerk of Howard County, Arkansas, for filing against the Meadors estate, on November 28th, 1938, and said claim was actually received by said Clerk on November 29th, 1938. The letter of transmittal from said District Attorney to said Clerk was dated November 28th, 1938, was signed "Clinton R. Barry, United States Attorney, by John E. Harris, Assistant United States Attorney," was addressed to Dale Floyd, Clerk of the Probate Court of Howard County, Arkansas, and recited in part as follows:

"Please find enclosed claim of the United States, in the name of the Federal Housing Administration in the sum of $2,493.93, which is prepared in proper form, and verified, which please cause to be approved by the Administrator, after which present to the Court and have it allowed."

4. On April 18th, 1939, the defendant, Oscar J. Pate, was appointed administrator in succession of said estate.

5. On May 1st, 1939, the Probate Clerk of Howard County, Arkansas, presented said claim of the United States to said Oscar J. Pate as administrator for allowance, and said claim was allowed in full by said administrator and classified by him as a claim of the third class, on advice of his attorney, Honorable James S. McConnell. Thereafter, on the same day, at the request of said Clerk, the said James S. McConnell, in open court, presented and handed up said claim of the United States to the Honorable A. P. Steel, Chancellor, presiding over said Probate Court. Said Probate Court then and there considered and examined said claim and, after consideration and examination thereof, duly rendered judgment allowing said claim against the estate of Lula Meadors, deceased, as a claim of the third class. No appeal was ever taken from said judgment by anyone. On the same day, the Court allowed other claims which had been duly presented against said estate, some of which were classed as priority claims and some as third class claims. The judgment of the Probate Court classifying the claim of the United States as a third class claim was in writing and was duly recorded in the judgment records of the Probate Court of Howard County, Arkansas. The other claims against said estate were allowed and classified by similar judgments.

6. On May 6th, 1939, the said James S. McConnell, as attorney for said Pate, wrote a letter to said Clinton R. Barry, United States Attorney, at his correct and proper

address, Fort Smith, Arkansas, advising that the claim of the Government was presented to the Court on May 1st, 1939, and allowed as a third class claim. Said letter was duly stamped and mailed and had the return address of James S. McConnell, Nashville, Arkansas, on the envelope, and was never returned to said McConnell.

7. On March 15th, 1940, the defendant Pate, as administrator, proceeded to make, and did make, distribution of all the funds of said estate, which said estate had been liquidated, and said distribution was made in accordance with the classifications, orders, and judgments of the Probate Court of Howard County, Arkansas. In making said distribution the said Pate on March 15th, 1940, wrote a letter to said Clinton R. Barry, United States Attorney, Fort Smith, Arkansas, enclosing check for $497.81, representing the proper dividend on said claim of the United States, on a third class basis, in which letter was the following recital:

"I am enclosing check for $497.81 representing a dividend due the creditors on third class claims on the estate of Lula Meadors deceased.

"This represents all receipts from the estate, but there is an item due the estate of about $200.00, which is of doubtful value and probably will not be collected."

Said District Attorney duly received said letter and said check for $497.81, but took no action in said Probate Court and made no further communication with said Pate until June 14th, 1940, on which date the said Clinton R. Barry, by John E. Harris, Assistant United States Attorney, wrote said Pate that the check was being held by the Attorney General in Washington pending further proceedings and that the claim should have been allowed as a preferred claim. At said time, no funds of the estate remained on hand, all of said funds having been distributed by the administrator on March 15th, 1940.

8. Said Clinton R. Barry, United States Attorney, duly received said check for $497.81, mailed him by said Pate as administrator on March 15th, 1940, and forwarded the same to the Attorney General of the United States, and said check was cashed by the proper authorities of the United States on October 12th, 1941.

9. On December 15th, 1941, the United States filed in the Probate Court of Howard County, Arkansas, an objection to the approval of the administrator's final account current, alleging that its claim was improperly classified, and that it received only $497.81, whereas it should have received the full amount thereof. This was the first and only objection filed by the Government in the Probate Court of Howard County, Arkansas. This objection was never presented to the Court, but was intentionally and voluntarily withdrawn by the Government on April 1st, 1942, by the filing by the United States Attorney of a formal withdrawal.

10. At the time said claim of the United States was filed in said Probate Court, and at all times thereafter, the estate of Lula Meadors, deceased, was insolvent.

### Conclusions of Law.

1. This Court has jurisdiction of the subject matter and of the parties herein.

2. The Probate Court of Howard County, Arkansas, had jurisdiction of the estate of Lula Meadors, deceased.

3. The United States of America voluntarily, and on its own initiative, filed its said claim in the Probate Court of Howard County, Arkansas, in the matter of the estate of Lula Meadors, deceased, and thereby became a party to the proceedings in said matter, and is bound by the judgments and decrees of said Court.

4. The United States is bound by the judgment of said Probate Court made and entered on May 1st, 1939, allowing its claim as a claim of the third class.

5. Under the laws of the State of Arkansas, the United States had six months from May 1st, 1939, within which to appeal from said judgment of the Howard County Probate Court, but failed to do so within said period of time; and at the expiration of said period said judgment became final.

6. Inasmuch as the United States permitted said judgment of the Probate Court of Howard County, Arkansas, against it, to become final, it cannot now recover herein from Oscar J. Pate, the administrator of said estate.

7. Judgment should be entered herein in favor of the defendant, Oscar J. Pate, and against the plaintiff, the United States of America.

### Comment.

The statute under which this action was brought, 31 U.S.C.A. § 192, reads as follows: "Every executor, administrator, or assignee, or other person, who pays, in whole or in part, any debt due by the person or estate for whom or for which he acts before he satisfies and pays the debts due to the United

States from such person or estate, shall become answerable in his own person and estate to the extent of such payments for the debts so due to the United States, or for so much thereof as may remain due and unpaid."

It is the contention of the Government that, under said statute and the facts as found by the Court, it is entitled to judgment against the defendant Pate for the difference between the dividend paid it and the full amount of its claim; and, in this connection, it insists that it is not bound by the judgment of the Howard County Probate Court, and that even if this Court should hold otherwise, it is not thereby precluded from looking to the defendant for the balance due on its claim for the reason that under the provisions of said statute the defendant became a trustee of the Government and as such it was his duty under the circumstances to appeal from the judgment of the Probate Court allowing the claim of the Government as one of the third class, and that had he done so, the judgment of that Court would have been reversed and the Government's claim given priority; and that, having failed so to appeal, he is now answerable to the Government for the amount remaining unpaid.

We cannot agree with the Government in this contention. It, of its own volition, filed its claim in the Probate Court of Howard County and thereby became a party to the proceedings pending there, and is bound by the orders and decrees of that Court duly made and entered, just as the other litigants in said cause were bound. Had the Government seen fit to do so, it could have held aloof from said proceedings and given the administrator notice of its claim, and then he, at his peril, would have been bound to see that the priority rights of the Government were fully protected. Field v. United States, 9 Pet. 182, 9 L.Ed. 94; United States v. First Huntington Nat. Bank, D.C.S.D.W.Va., 34 F. Supp. 578; First Nat. Bank v. United States, 4 Cir., 117 F.2d 376. But it saw fit to pursue another course, and to submit its claim against the Meadors estate to the Probate Court of Howard County, a court having jurisdiction to administer said estate; and, having done so, it is bound by the judgment of said Court. To hold otherwise would lead to chaos.

It was stated by the Supreme Court of the United States in the early case of United States v. Nourse, 6 Pet. 470–493, 8 L.Ed. 467: "In judicial proceedings, no exclusive rights are given to the government in this respect, over other suitors, except by statutory provisions. * * * Having submitted itself to the special jurisdiction created by the act, it is as much bound by the decision of the judge, as an individual; and can claim no exemption from the decision, by appeal or otherwise, which does not belong equally to the other party, independent of any special provision."

In the instant case we have been cited to no statutory provision giving the United States any greater rights than those of any other litigant in the Howard County Probate Court, and we know of none.

The Circuit Court of Appeals of this Circuit in Re Minot Auto. Co., Inc., 8 Cir., 1924, 298 F. 853, 857, held in a bankruptcy case that the Government was bound by the rules of the court allowing a limited time only within which to file a petition for review of an order of the referee, and said: "No case has been cited, and we think none can be found, sustaining the proposition that the United States, because of its sovereign character, when a litigant in one of its courts, is not bound by the rules enacted for the orderly administration of justice. More than 30 years ago, in United States v. Goodrich [8 Cir.], 54 F. 21, 4 C.C.A. 160, this court held that its rules were binding upon the United States. The United States, when it enters one of its courts as a litigant, lays aside its power, and to the same extent as other litigants must conform to rules, without the enforcement of which the orderly administration of justice in the courts would be impossible."

Certainly, if the United States is bound to the same extent as other litigants when it enters one of its own courts, it is likewise bound when it enters a court of competent jurisdiction of one of the sovereign states.

With reference to the second contention of the Government, to the effect that Pate was its trustee under the statute, and that it was his duty to appeal from the judgment of the Probate Court, and having failed to do so he is liable for the unpaid balance on the note held by the Federal Housing Administrator, the answer it seems to us is that Pate, as administrator, was the trustee for all of the creditors, and since the Government was a party to the suit, it became its duty, rather than his, to appeal, if it felt aggrieved by the order

of the Court. Pate, as administrator, allowed the claim as one of the third class, acting on the advice of his attorney, James S. McConnell. Mr. McConnell testified that he believed at the time that the claim was not entitled to priority. The proof shows that when the claim was presented to the Honorable A. P. Steel, Chancellor, in open court, he gave consideration thereto before allowing it as a claim of the third class. This was on May 1st, 1939, at which time it had been held on high authority that a similar claim was not entitled to priority. Federal Housing Administrator v. Moore, 9 Cir., May 10, 1937, 90 F.2d 32. Under the Arkansas statute, Act 164 of the Acts of the General Assembly of 1939, the Government had six months within which to appeal from Judge Steel's decision; that is, until November 1st, 1939, and it was not until December 15th, 1941, that the Supreme Court of the United States held in a five to four decision that a Federal Housing claim was entitled to priority. United States v. Emory et al., 314 U.S. 423, 62 S.Ct. 317, 86 L.Ed. 315. Under these circumstances, it is problematical, to say the least, what would have been the result had the case been appealed from the Howard Probate Court to the Supreme Court of Arkansas.

Even if the United States Attorney did not receive the letter written by Mr. McConnell under date of May 6th, 1939, advising him that the claim of the Government had been allowed by the Court as a third class claim—and there was no evidence introduced to that effect—it, under the law, had constructive notice thereof, and, as stated, if it felt aggrieved, it, rather than the administrator, should have appealed.

 In closing its oral argument, the Government advanced the further proposition that, irrespective of whether it was bound by the judgment of the Probate Court, and irrespective of the duty of the administrator to appeal therefrom, it was, under said statute, entitled to hold Pate for the deficiency; but it cited no authority to sustain this contention. We think that the proposition is unsound. It is fundamental that an administrator or executor in paying out funds under order of a court of competent jurisdiction is protected as against a party to the suit; and, as stated in Re Anderson, 2 Cir., 279 F. 525–529:

"It [the Government] cannot stand by, as it did here, after permission having been granted to file its claim, and expect to subsequently collect the tax from the bankrupt *or his trustee.*" (Italics supplied.)

See, also, in connection with the foregoing, In re Stavin, D.C.N.Y., 12 F.2d 471; and Cohen v. United States, 1 Cir., 115 F.2d 505.

The Government stood by in the case at bar and permitted the Probate Court to classify its claim as one of the third class, and stood by for six months thereafter without appealing from said judgment and allowed the administrator to make distribution in accordance therewith, and permitted the same to become final. Moreover, it accepted the administrator's check and deposited it. In the face of this action and non-action, it will not now be allowed to collect the deficiency from the administrator.

Let the complaint be dismissed.