### BAKER v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. November 29, 1921.)

No. 3623.

Master and servant ⬅13—Telegraph office held not "continuously operated night and day," in violation of statute.

The fact that defendant railroad company, which kept its telegraph office at a station open from 7 a. m. to 7 p. m. only, having only one operator, who remained on duty from 7 a. m. to 6 p. m., and until 7 p. m. if necessary to deliver a train order, had an arrangement with another railroad company, which maintained a separate telegraph office in a tower at some distance, continuously operated by three shifts, to receive and deliver its train orders during the hours when its own office was closed, for which it paid a sum monthly, *held* not to make its office one "continuously operated night and day," within the meaning of Hours of Service Act, § 2 (Comp. St. § 8678), which rendered the hours of service required of its operator a violation of the act.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Continuously Operated.]

In Error to District Court of the United States for the Southern District of Texas; J. C. Hutcheson, Judge.

Action by the United States against James A. Baker, receiver of the International & Great Northern Railway Company. Judgment for plaintiff, and defendant brings error. Reversed.

For opinion below, see 261 Fed. 703.

Samuel B. Dabney and William H. Wilson, both of Houston, Tex., for plaintiff in error.

D. E. Simmons, U. S. Atty., of Houston, Tex., and Monroe C. List, Sp. Asst. U. S. Atty., of Washington, D. C.

Before WALKER, BRYAN, and KING, Circuit Judges.

WALKER, Circuit Judge. The United States brought this action against the plaintiff in error, the receiver of the International & Great

Northern Railway (herein referred to as the defendant), to recover penalties for 10 alleged violations of the following portion of the Hours of Service Act (34 St. 1415; U. S. Compiled Stats. § 8678):

"That no operator, train dispatcher, or other employee who by the use of the telegraph or telephone dispatches, reports, transmits, receives, or delivers orders pertaining to or affecting train movements shall be required or permitted to be or remain on duty for a longer period than nine hours in any twenty-four hour period in all towers, offices, places, and stations continuously operated night and day, nor for a longer period than thirteen hours in all towers, offices, places, and stations operated only during the day time, except in case of emergency, when the employees named in this proviso may be permitted to be and remain on duty for four additional hours in a twenty-four hour period on not exceeding three days in any week."

Each of the several counts of the petition alleged that on a named day the defendant required and permitted its certain telegraph operator and employee, M. Menger, to be and remain on duty for a longer period than nine hours, to wit, from 7 o'clock a. m. on said day to 6 o'clock p. m. on said day, at defendant's office and station at Navasota, Tex., which office and station was alleged to have been at the times mentioned one continuously operated night and day, and it was alleged that said employee, while required and permitted to be and remain on duty as aforesaid, by the use of the telegraph or telephone, dispatched, reported, transmitted, received, and delivered orders pertaining to and affecting the movement of trains engaged in interstate commerce. The defendant denied the alleged violations of the act, claiming that its telegraph office or station at Navasota was one operated only during the daytime.

The case was tried on the pleadings and an agreed statement of facts. That statement shows the following:

At Navasota the defendant maintained a telegraph office and station, at which M. Menger was employed and acted as telegraph operator from 7 a. m. to 6 p. m., with an hour off about noon for dinner. If a train for which he had an order had not arrived at 6 p. m., he was required to remain on duty until 7 p. m., in order to deliver that train order. No telegraphic service whatever was carried on in defendant's station building between 7 p. m. and 7 a. m. The Houston & Texas Central Railroad Company, whose line of railroad is parallel to and immediately adjoins the line of the International & Great Northern Railway at Navasota, had a building, known as the H. & T. C.-Santa Fé tower, about 850 feet from defendant's station, at which were employed by the Houston & Texas Central Railway Company three telegraph operators, each of whom worked a shift of 8 consecutive hours; that tower being operated continuously for 24 hours each day. Under a contract between the Houston & Texas Central Railroad Company and the defendant, the former, for $50, per month, furnished telegraphic service to the latter between the hours of 6 p. m. and 6 a. m. All orders issued between those hours for the movement of trains over the defendant's line were issued by the defendant's train dispatcher at Mart, Tex., and transmitted to the Houston & Texas Central operator on duty in said tower, and were delivered by that operator to the

crews of the defendant's trains to whom they were directed. When Menger had orders for trains which failed to arrive by 7 p. m., he would carry those orders to the Houston & Texas Central operator, who would sign for them in defendant's transfer book, and thereafter deliver them to the proper train crews. Each morning, before Menger went on duty, he would telephone to the tower to find if any train orders were undelivered, and, if so, would go after them and sign for them in the transfer book, thereafter delivering them from the defendant's station in the usual manner. The defendant had no part in employing or paying the operators in said tower. He had nothing to do with the selection or discharge of those operators, and had no authority or jurisdiction over them or over the operation of said tower.

The act of the defendant in requiring and permitting his employee, Menger, to remain on duty as telegraph operator from 7 o'clock a. m. to 6 o'clock p. m. at the defendant's office and station at Nevasota did not make the defendant liable to the penalty prescribed by section 3 of the Hours of Service Act (U. S. Comp. St. § 8679), unless that office and station was one continuously operated night and day. What is relied on as having the effect of making that office and station of the defendant one continuously operated night and day is the existence of the above-mentioned contract between the defendant and the Houston & Texas Central Railroad Company and the rendition of service in pursuance of that contract. The language of the statute discloses an intention to forbid a carrier coming within its terms to require or permit an employee engaged in the specified service to be or remain on duty for a longer period than 9 hours in any 24-hour period in any tower, office, place, or station continuously operated by such carrier night and day.

The Houston & Texas Central Railroad and the railroad of which the defendant is the receiver are different and distinct entities, separately operated and managed. The former's telegraph tower or office at Navasota was continuously operated night and day; three operators being employed, each of them serving only 8 hours during the 24. The defendant operated his telegraph office at that place only during the daytime. So far as appears, nothing occurred which we think properly can be given the effect of making those two offices at any time in substance and effect a single office, place, or station within the meaning of the act. The facts disclosed clearly differentiate this case from decided cases (Atchison, Topeka & Santa Fé Ry. Co., v. United States, 236 Fed. 908, 150 C. C. A. 168; Illinois Central R. Co. v. United States, 241 Fed. 667, 154 C. C. A. 425), in which it was unsuccessfully contended that a railroad company had more than one telegraph office or service at a place where that service was merely divided between employees of such company who operated successively in two or more places in near proximity; the two services constituting practically one unit.

The Houston & Texas Central tower at Navasota was not jointly operated at any time by its owner and the defendant. The telegraphic services therein were rendered by operators employed and paid by its owner, with whose selection and discharge the defendant had nothing to do; he having no part in or control over the operations there carried

on, nor authority over another's employees working therein. At no time were the two offices practically one unit. There was a lack of identity between them. And this is not a case of two carriers exchanging services, of one of the two rendering the telegraph services required by both during part of the day, and the other rendering such services during the other part of the 24 hours. What was done was not, in intention or effect, an evasion of the provisions of the statute. We are not of opinion that the performance by the Houston & Texas Central Railroad Company of the services called for by its contract with the defendant had the effect of making the defendant's telegraph office at Navasota one continuously operated night and day within the meaning of the statute. That being so, what the defendant did was not a violation of the statute.

The judgment is reversed.